664 So.2d 1054 (1995)
Robert A. MILLS, as Trustee of the Witherill Unitrust Trust, Appellant,
v.
E. Tefft BARKER, Appellee.
No. 94-04466.
District Court of Appeal of Florida, Second District.
November 29, 1995.
*1055 Barry F. Spivey of Ruden, Barnett, McClosky, Smith, Schuster & Russell, P.A., Sarasota, for Appellant.
Richard E. Nelson and Robert C. Widman of Nelson, Hesse, Cyril, Smith, Widman, Herb, Causey & Dooley, Sarasota; and L. Norman Vaughan-Birch and Anita J. Hanna of Kirk Pinkerton, P.A., Sarasota, for Appellee.
*1056 SCHOONOVER, Judge.
The appellant, Robert A. Mills, as Trustee of the Witherill Unitrust Trust, challenges a trial court order dismissing a replevin action seeking possession of certain trust property under the control of the appellee, E. Tefft Barker. We agree with Mr. Mills' contention that the trial court erred by granting Mr. Barker's motion for involuntary dismissal and, accordingly, reverse.
During the month of August 1991, Huntington B.C. Witherill established an irrevocable charitable remainder unitrust with assets valued at more than seven million dollars. Mr. Witherill and Tracy Morrison, now Tracy Morrison Witherill, were named the income beneficiaries of the trust and a charity known as the "Center for Photographic Art" was designated the remainder beneficiary. All of the beneficiaries of the trust are residents of the state of California and the trust agreement provides, subject to United States tax considerations, that the agreement and all rights and obligations under it are to be determined in accordance with the law of the state of California. Mr. Barker was appointed trustee of the trust, and Mr. Mills was named alternate trustee.
In May 1994, an agreement entitled "Modification of Witherill Unitrust Trust" was executed by the three beneficiaries. The modification agreement recited that the original agreement was being modified pursuant to section 15404 of the Probate Code of the state of California for the purpose of changing the identity of the trustee. Mr. Mills was named as trustee to replace Mr. Barker. The modification agreement indicates that it was signed by Mr. and Mrs. Witherill and by Mr. T.J. Orland, the president of the Center for Photographic Art. The parties' signatures were each acknowledged by a California notary public whose seal was affixed to the agreement. In the case of the Witherills, the notary's certificate provided that they appeared before the notary and that they were either personally known to the notary or proved to him that they were the persons whose names were subscribed to the instrument and that they acknowledged that they executed the instrument. In the case of the charity, the certificate also provided that the president of the charity acknowledged executing the instrument in his authorized capacity and on behalf of that entity.
A copy of the executed agreement was furnished to Mr. Barker, but he refused a demand that he turn over the assets of the trust to Mr. Mills who subsequently filed a replevin action in Sarasota County, Florida. The amended complaint alleged that Mr. Mills was entitled to the possession of the trust assets as successor trustee under the modification agreement.
The parties agreed that the matters in dispute were controlled by California law and consented to allow the court to take judicial notice of that portion of the California law which allows a trust to be modified without court approval if the settlor and all beneficiaries of the trust consent. Cal.Probate Code § 15404 (West 1994).
At the final hearing, the parties stipulated that the original trust agreement could be admitted into evidence, but Mr. Barker objected to introduction of the modification agreement.
Mr. Mills' attorney attempted to have the modification agreement introduced into evidence by the testimony of Mr. Mills. Mr. Mills testified that he prepared the agreement and that he knew that the signatures of Mr. and Mrs. Witherill were genuine. He, however, had never met Mr. Orland and could not testify to the genuineness of his signature. On the basis of this testimony, the court refused to allow the modification agreement to be introduced for the purpose of establishing consent of the charity. The court also did not accept Mr. Mills' argument that the agreement was properly authenticated and should be admitted into evidence because all of the signatures were notarized by California notaries public.
Without the agreement as evidence of proper consent to the modification, Mr. Mills could not establish a prima facie case showing his entitlement to possession of the trust assets. The court, accordingly, granted Mr. Barker's motion for an involuntary dismissal made at the close of Mr. Mills' case. See Fla.R.Civ.P. 1.420(b). Mr. Mills filed a timely *1057 notice of appeal from the order dismissing the replevin action.
If the court was correct in refusing to allow the modification agreement into evidence, it was also correct in granting Mr. Barker's motion for an involuntary dismissal. If the court erred by refusing to admit the agreement into evidence, and if we consider it, then Mr. Mills presented some competent evidence on each element of his cause of action, and the matter should not have been dismissed. Since we find that the agreement was properly authenticated and should have been admitted into evidence, we find the court erred by dismissing the action and, accordingly, reverse and remand for further proceedings. See Department of Health & Rehabilitative Servs. v. Thibodeaux, 547 So.2d 1243 (Fla. 2d DCA 1989).
Authentication or identification of evidence is required as a condition precedent to its admissibility. § 90.901, Fla. Stat. (1993). In this case, Mr. Mills had the option of authenticating the modification agreement by either using extrinsic evidence sufficient to support a finding that the agreement met the requirements of section 90.901 or by showing that the agreement met the self-authenticating requirements of section 90.902, Florida Statutes (1993). Section 90.902(9) provides that extrinsic evidence of authenticity is not required for any document declared by the legislature to be presumptively or prima facie genuine or authentic.
Mr. Mills contends that his testimony was sufficient to authenticate the modification agreement and alternatively that it was self-authenticated pursuant to section 90.902(9).[1]
We disagree with Mr. Mills' contention that his testimony was sufficient extrinsic evidence to authenticate the document. Although he testified to the genuineness of Mr. and Mrs. Witherill's signatures, he could not properly verify Mr. Orland's signature. He testified that he had seen a signature purporting to be that of Mr. Orland on more than one occasion, but he had never seen Mr. Orland affix his signature to any document. Mr. Mills also testified that he had never met Mr. Orland.
We agree, however, with Mr. Mills' contention that the document was self-authenticated and should have been admitted into evidence. As mentioned above, section 90.902(9) provides that a document is self-authenticated whenever the legislature declares it to be presumptively or prima facie genuine or authentic. This statute together with section 92.50(2), Florida Statutes (1993), furnish the authority for the admission of the modification agreement. Section 92.50(2) provides that acknowledgments required or authorized under the laws of this state may be taken or administered in any other state before any notary public having a seal in such state provided, however, such officer or person is authorized under the laws of such state to take or administer oaths, affidavits, and acknowledgments. The statute further provides that the certificate of proof or acknowledgment shall be authenticated by the signature and official seal of such officer or person taking or administering the same.
Under the facts of this case, the certificate of acknowledgment signed by the notary public with his seal attached is sufficient to authenticate each signature appearing on the modification agreement and, therefore, to require the admission of the agreement into evidence. The admission of the modification agreement does not conclusively establish authenticity but indicates initial sufficiency. Mr. Barker is still free to attack its genuineness. Sunnyvale Maritime Co., Inc. v. Gomez, 546 So.2d 6 (Fla. 3d DCA 1989).
Mr. Barker does not contend that section 92.50(2) does not authorize the taking of an acknowledgment by an out of state notary public having a seal, but he does *1058 contend that the statute requires evidence that the person is authorized under the laws, in this instance of California, to take acknowledgments. Although we agree with this contention, it does not change our holding.
More than 100 years ago the United States Supreme Court, while considering a similar statute, said that unless a statute requires evidence of official character to accompany the official act which it authorizes, none is necessary. Carpenter v. Dexter, 75 U.S. (8 Wall.) 513, 19 L.Ed. 426 (1869). Accordingly, it is not necessary to furnish additional evidence establishing the fact that the notaries public who signed the agreement were in fact notaries public.
The Carpenter court also said that where one state recognizes acts done in pursuance of the laws of another state, its courts will take judicial cognizance of those laws, so far as it may be necessary, to determine the validity of the acts alleged to be in conformity with them. Mr. Barker agrees that section 1811 of the California Civil Code confers authority to take acknowledgments of a California notary public but contends that the court was not requested to and did not take judicial notice of this statute. Florida courts will take judicial notice of the common law and the statutes of other states. § 90.202(2), Fla. Stat. (1993). The notice does not operate automatically in every case, however, and must generally be pleaded and proved. Aboandandolo v. Vonella, 88 So.2d 282 (Fla. 1956). See also Miller v. Shulman, 122 So.2d 589 (Fla. 3d DCA 1960). Where, as in this case, the law of a foreign forum is claimed to be dispositional, but is not pleaded to the trial court, the matter is to be determined by the law of this state and a presumption arises that the foreign law is the same as ours. See Columbian Nat'l Life Ins. Co. v. Lanigan, 154 Fla. 760, 19 So.2d 67 (Fla. 1944). See also Aetna Casualty & Surety Co. v. Ciarrochi, 573 So.2d 990 (Fla. 3d DCA 1991).
Although the better practice in a situation like the one presented to us would have been to properly request the court to take judicial notice of the California law which authorizes a notary public to take acknowledgments, the failure to do so is not fatal. In the absence of a request to take judicial notice, we presume that California law is the same as Florida law and, therefore, conclude that the modification agreement was properly authenticated and should have been admitted into evidence. See Columbian Nat'l Life Ins. Co.
We, accordingly, reverse and remand for proceedings consistent herewith.
DANAHY, A.C.J., and WHATLEY, J., concur.
NOTES
[1] It was brought to our attention at oral argument that Mr. Orland's signature was different than the way his name was set forth in the notary's certificate. It is the established policy of the law to uphold certificates of acknowledgment, and whenever substance is found, obvious clerical errors and all technical omissions will be disregarded. Cleland v. Long, 34 Fla. 353, 16 So. 272 (Fla. 1894). See also House of Lyons, Inc. v. Marcus, 72 So.2d 34 (Fla. 1954). (The whole of the instrument acknowledged may be resorted to for support of the acknowledgment.)