L. F. CAWTHON, E. W. THORPE, H. E. WICKERSHAM, R. N. TARANCE AND M. T. KING, MEMBERS OF THE TOWN COUNCIL OF THE TOWN OF DEFUNIAK SPRINGS, FLORIDA; A. R. CAMPBELL, CLERK AND TREASURER OF SAID TOWN, *Plaintiffs in Error,* v. THE STATE OF FLORIDA, *Ex. Rel.* R. H. ADAMS AND W. F. GRAVES, MEMBERS OF THE TOWN COUNCIL OF THE TOWN OF DEFUNIAK SPRINGS, FLORIDA, *Defendants in Error.*

1. Where it is the evident purpose of a mandamus proceeding to so amend the minutes of a town council, as to lay a foundation for an attack upon an alleged compromise agreement between the town council and a party claiming some interest in a Park in said town, but not made a party to

134     SUPREME COURT OF FLORIDA.

such mandamus proceeding, the peremptory writ should not be awarded.

2. Mandamus is not the proper method of trying collateral questions which require a legal controversy for their settle-ment.

This case was decided by Division B.

Writ of error to the Circuit Court for Walton County.

The facts in the case are stated in the opinion of the court.

*S. K. Gillis,* for Plaintiffs in Error;

*Wm. W. Flournoy,* for Defendants in Error.

HOCKER, J.—This is a mandamus proceedings brought by relators Adams and Graves, members of the town council of DeFuniak Springs, against Cawthon, Thorpe, Wickersham, Tarance and King, the other members of said town council, and A. R. Campbell, Clerk and Treas-urer of said town. The alternative writ is a long one, and we shall endeavor to state as briefly as possible its substantial allegations. It states that for some time the question of title to Chipley Park has caused much conten-tion between citizens of said town, a park platted on the map of Lake DeFuniak, a photographic copy of which plat is made a part of the alternative writ which is shown by said map to be a public park; that one part of the citizens claim said park was dedicated as a public park, and the other part have been endeavoring the bring-ing of a suit in the name of the town to test the legality of the claim of ownership and possession thereof by the

Florida Chautauqua Association; that in the year 1882 the Lake DeFuniak Land Company, a corporation, owned section 35, township 3 N. R. 19 W. and platted the same, within which section Chipley Park is located, as is shown by said map or plat; that from said map the Lake De-Funiak Land Company sold numerous lots, aggregating in value thousands of dollars, and by reason of this con-duct Chipley Park was dedicated irrevocably to the parties; that said Chipley Park remained in said con-dition until July, 1889, when the Lake DeFuniak Land Company assumed the right to, and did execute a deed of said park to the Florida Chautauqua Association, a Flor-ida corporation, which has since asserted a claim of ownership and possession of said Park; that occasional voluntary subscriptions, including subscriptions of the town of DeFuniak Springs, have been used on said Park in cleaning the weeds and bushes therefrom; that on said map it is written "Purchasers of lots receive fee simple title, all parks and slopes toward the lake remain public property;" that the contention as to the question of title and ownership has on several occasions been presented to the town council of said town, and was again presented to the said town council in the months of January and February, 1910, on motions to use the town's name to bring a suit to test the validity of such claim, but the town council declined so to do, upon the pretext that the same would be too expensive; that immediately there-after on the 4th day of February, 1910, Wm. W. Flournoy, J. R. Brown, R. H. Adams, J. J. McCaskill, W. F. Graves, J. P. Cawthon, G. P. Morris, R. W. Storres, D. S. Gillis, residents and citizens of the said town, petition the said town council to take such form of action as was necessary to settle the question of title to the said Chipley Park, and in said petition said persons, both, severally, jointly

and firmly obligated themselves to pay all expenses which might be incurred in any action taken by said town, or by the mayor, for the purpose as aforesaid of settling the question of title to the said park, yet said town council by a majority vote declined to authorize the use of the town's name to bring any suit to test the validity of the claim of the said Florida Chautauqua Association over said park; that after the consideration of said petition at a regular meeting of the town council in February, it appointed a committee to confer with the Florida Chautauqua Association to see if an amicable adjustment of the issue relative to title and possession could not be made.   On February 18, 1910, said committee made its report to said council announcing that a settlement had not been made, and requested further time.   On the 3rd day of March, 1910, at a regular meeting of said Council, the committee composed of L. F. Cawthon, R. N. Tarance and M. T. King, through M. T. King, offered its report verbally that they had conferred with the Florida Chautauqua Association, and it had agreed it would execute to the town of DeFuniak Springs a quit claim deed to said Chipley Park, and all improvements excepting and reserving only the Tabernacle with only a few feet on each side, the Library and the Presbyterian Church, upon the payment by the town to the said Florida Chautauqua Association of the sum of two thousand dollars, to be paid and evidenced by ten warrants to be immediately issued, payable two hundred dollars annually without interest; that in the report of said committee at said time no other condition or reservation whatever was attached to the offer of the said Florida Chautauqua Association; that then and there upon motion of E. W. Thrope the proposition was accepted, and the said committee was instructed to have the necesary papers drawn

up, and to secure the quit claim deed, and the said warrants were ordered to be drawn in accordance with the verbal agreement, and on motion of Councilman Thrope a vote of thanks was tendered the committee for the amicable adjustment they had made; that thereafter individual members of said committee, notwithstanding they knew no conditions were attached to the proposition except as above set forth, and knew they had no authority to act except as above set forth, wilfully, designedly and collusively accepted a deed from the Florida Chautauqua Association, with numerous conditions and reservations not considered or authorized by the town council, except there was a suggestion at the time of the report of said committee that some officers of the Florida Chautauqua Association wished no pine trees be cut, which suggestion the town council declined to accept, and was not insisted upon, because, among other reasons, as then considered, the Park Committee would take care of the beautifying of said Park; that the conditions and reservations so contained in the deed had not been submitted to or considered by the said committee, and the deed was accepted wilfully, designedly and collusively, without concerted action of the committee, and without the knowledge or authorization of the town council, and the deed immediately after its execution, without being submitted to the committee, town council or mayor, was presented to the Clerk, A. R. Campbell, and L. F. Cawthon of said committee, and the Clerk was requested to have the same immediately recorded. Said deed as appears on its face was executed upon the 25th of March, 1910, and was recorded at 9 A. M. on the 28th of March, 1910, as appears by a copy of said deed attached to and made a part of the petition and alternative writ; that the ordinance of the town and statutes of the State re-

quire the town council to keep a regular record of their proceedings; that the Clerk of the town, A. R. Campbell, according to custom, prepared the minutes of the proceedings; that on April 7th, 1910, the council in regular meeting considered the action of the individual members in accepting and having recorded the deed aforesaid, and consideded the minutes as prepared in typewritten and pencil memoranda by the clerk for the regular meeting of the 3rd of March, 1910, and authorized and directed by a vote of three to two, Councilmen Thorpe, King and Wickersham in the affirmative and Adams and Graves in the negative—Tarance not voting, the adoption of the following language: The alternative writ then sets forth the language of a typewritten and pencil memorandum of the minutes of the meeting of March 3rd, 1910, prepared by the clerk, viz.: "The committee (composed of L. F. Cawthon, M. T. King, and R. N. Tarance) appointed at last meeting to adjust the settlement of the title of Chipley Park, the alley between 7th and 8th streets and Baldwin Avenue, South of the railroad, and west of the Depot, (made a verbal report). Mr. L. F. Cawthon and Mr. M. T. King of the above committee, reported that they had held a conference with some of the officers of the Chautauqua Association and that they had proposed to sell the improvements (and make a quit claim deed with certain reservations) on Chipley Park for $2000.00, Dollars, to be paid in annual installments of $200.00, each without interest and (on motion of E. W. Thrope) it was ordered that the proposition be accepted and (closed and) the President of the council, L. F. Cawthon, was instructed to have the necessary papers drawn up and to draw warrants for same as per verbal agreement."

It is alleged that the matter above stated in paren-

theses was written in pencil as interlineations, on the typewritten memoranda of the clerk, to become the permanent record of the minutes of the meeting of the 3rd of March, 1910, relative to the acceptance of the proposition of the Florida Chautauqua Association and by vote the council approved of the said action of the individual members of the committee in accepting and recording the deed, and in issuing the warrants. It is alleged that when the said memorandum of the minutes of the meeting of March 3rd, 1910, were considered at the regular meeting of the council on April 7th, 1910, said memorandum had not been written in the regular minute record of the proceedings of the town council, but remained in typewritten and pencil memoranda.

It is alleged that the minutes as adopted and hereinbefore quoted was and is not a fair or sufficient exposition or record of the proceeding of the town council relative to Chipley Park, had and done at their meeting in open session on March 3rd, 1910; that relators at the regular meeting on April 7th, 1910, insisted and demanded that said minutes be amended so as to be a fair, proper and regular record of such proceeding, and then follows a statement of the very language which the minutes should have contained in order that the record of the minutes might fairly and sufficiently show the proceedings had with reference to the deed.

This statement is lengthy, and it is sufficient to state that it sets out the report of the committee who conferred with the Chautauqua Association, in which said association offered to sell and quit claim Chipley Park to the town reserving only the Chautauqua Tabernacle, the Library and Presbyterian Church. It states that the committee reported that some of the officers of the association had spoken of not wanting the pine trees cut, but

the council considered this and other matters of beautifying the park be left to the Park Committee. It is alleged that this amendment is essential to a true statement of the acts of the town council at their meeting of March 3rd, 1910, and yet respondants *wilfully* and *designedly* declined to make the amendment to said minutes requested by relators by a vote of three to two; that Councilman Tarance expressed the view that inasmuch as the deed had reservations in it not known to the town council, the matter would have to be referred back to the council for their consideration. Then follows the order of the Court that respondants, members of council, hold a meeting and amend the minutes of March 3rd, 1910, *nunc pro tunc.* as suggested by relators, and upon failure to do so respondants make return to the Court at 10 o'clock A. M. April 13th, 1910, at Pensacola, why they refused so to do.

We do not think it necessary to set out the exhibits made parts of the alternative writ. One of the exhibits is a map of Lake DeFuniak, showing Chipley Park.

On the 15th of April, 1910, a motion was made by respondants, plaintiffs in error, to quash the alternative writ of mandamus and dismiss the case. This motion was overruled, and this ruling is assigned as error.

On April 13th. 1910, respondants filed a return to the alternative writ, in which, among other things, they deny that amendment to the minutes sought by the alternative writ represents a true and fair account of the transaction. Testimony was taken, and on final hearing a peremptory writ was ordered issued and served on respondants. A supersedeas was denied by the Circuit Judge and a writ of error was sued out.

The first assignment questions the ruling denying the motion to quash the alternative. It is perfectly evident

that the purpose of having the minutes of the town council amended is to lay the foundation for an attack upon the alleged compromise agreement, which resulted in the execution of a deed to the town by the Chautauqua Association. If this is not the purpose then we can perceive no useful purpose to be subserved by this proceeding. But this purpose if accomplished by the peremptory writ will unquestionably affect the claim of interest by the Chautauqua Association and the said association is not a party to this proceeding. Under such circumstances a writ of mandamus should be refused. State *ex rel* Dixon v. Trustees International Improvement Fund, 20 Fla. 402. It is not the proper method of trying collateral questions which require a legal controversy for their settlement. Spelling on Injunctions and Other Extra Ordinary Remedies (2nd Ed) Sec. 1386; State *ex rel* H. W. Metcalf Co. v. Martin, 55 Fla. 538, 46 South. Rep. 424. If the purpose of the writ is not as indicated above, then we fail to discover that it has any useful purpose at all, and under such circumstances the writ should not be granted. Howell v. State *ex rel* Edwards, 54 Fla. 199, 45 South. Rep. 453; State *ex rel* Kehoe v. McRae, 49 Fla. 389, 38 South. Rep. 605.

In view of the fact that there has been much dispute as to the status of Chipley Park, and the rights of the public in said Park, we feel authorized to suggest that in our opinion, on the facts stated in the alternative writ, the only court having complete power to settle the whole controversy, to determine the rights of all concerned is the court of chancery; and that a bill for that purpose may be filed by any property owner in the town having an interest in the maintainance of Chipley Park, as a public park. All the facts could be brought out in such a proceeding and a decree made in accordance with facts

as they may appear, and the law applicable to such facts. Florida East Coast R. Co. v. Worley, 49 Fla. 297, 38 South. Rep. 618.

The judgment below is reversed.

TAYLOR and PARKHILL, J. J., concur;

WHITFIELD, C. J., and SHACKLEFORD and COCKRELL, J. J., concur in the opinion.